IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| MELINDA MALPHRUS CARN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:16-cv-00892-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| WAL-MART STORES, INC. and | ) | |
| WAL-MART STORES EAST, LP | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The following matter is before the court on defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP's (collectively, "Walmart") motion for summary judgment, ECF No. 13. For the reasons set forth below, the court denies the motion for summary judgment.

## I.  BACKGROUND

This case stems from a slip and fall that occurred on November 18, 2013 at a Walmart store in Hardeeville, South Carolina. Plaintiff Melinda Malphrus Carn ("Carn") was in the produce department of the Walmart when she fell on a puddle of water. As a result of the fall, Carn suffered injuries to her neck, back, and spine.

On February 9, 2016, Carn filed suit, alleging that Walmart was negligent and reckless by: (1) failing to provide a safe environment for patrons to do business on the premises; (2) allowing a puddle of water to form and remain on the floor of the store; (3) failing to place appropriate signs or barricades warning patrons, and Carn specifically, of the existing danger; (4) failing to train its employees how to properly address and handle such situations that could cause injury to patrons; and (5) failing

1

to exercise the degree of care that a normal prudent person would exercise under the circumstances.

Walmart filed this motion for summary judgment on February 20, 2017, to which Carn responded on March 6, 2017. The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

### A. Summary Judgment

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

Walmart moves for summary judgment, arguing that Carn has failed to establish that Walmart created the puddle of water on the floor or that Walmart had actual or constructive notice of the dangerous conditions that caused Carn's injuries. Def.'s Mot. 1. Without this, Walmart contends, Carn's claims fail as they are all based on premises liability. Walmart does not dispute that there was a puddle of water on the floor of the produce department, or that Carn suffered injuries from slipping on the puddle and falling down. Carn contends that there are factual disputes on the record that can only be resolved by a jury.

As a Walmart patron, Carn was a business invitee to the Walmart store at the time of her injuries. Sims v. Giles, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001) ("A business visitor . . . is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner."). Walmart is not required to maintain its store in such a condition that no accident could happen to a patron. See Denton v. Winn–Dixie Greenville, Inc., 439 S.E.2d 292, 293 (S.C. 1993). But under South Carolina law, Walmart owes business invitees such as Carn a duty to exercise reasonable and ordinary care for their safety and is liable for any injuries resulting from a breach of this duty. H.P. Larimore v. Carolina Power & Light, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000) (internal citations omitted). To recover damages for injuries caused by a dangerous or defective condition on a landowner's premises, a plaintiff must show that (1) the injury was caused by a specific act of the defendant which created the dangerous condition, or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it.

Wintersteen v. Food Lion, Inc., 542 S.E.2d 728, 729 (S.C. 2001). Since the court finds that there is a genuine issue of material fact on the issue of whether Walmart had knowledge of the puddle and failed to remedy it, an adequate and independent ground for denying Walmart summary judgment, it need not assess if Walmart's actions created the puddle.

Carn contends that Walmart had actual or constructive knowledge that there was a puddle of water in the produce aisle where she fell. Constructive knowledge of a dangerous condition can be established by showing "that the foreign substance had been on the floor for a sufficient length of time that the storekeeper would or should have discovered and removed it had the storekeeper used ordinary care." Gillespie v. Wal–Mart Stores, Inc., 394 S.E.2d 24, 24–25 (S.C. Ct. App. 1990). The court notes that the parties have not deposed the Walmart employees responsible for overseeing general maintenance of the produce department—namely Harry Toomer, the Walmart employee who is seen on the surveillance video taken immediately preceding Carn's fall sweeping garbage from the aisles of the produce department, or the cart custodian who is seen on the surveillance videotape loading and unloading produce in the produce aisles. Indeed, Carn's testimony is the only deposition evidence in the record before the court. Without the testimony of Toomer, the court is unable to determine if Toomer, or any other Walmart's employee, had actual or constructive knowledge of the puddle in the produce department. The court cannot properly analyze the actual and constructive knowledge issue with Carn's deposition testimony alone—Carn cannot accurately testify about Toomer's or the cart custodian's knowledge of the puddle.

Walmart appears to argue that because there is no deposition testimony from any Walmart employee in the record before the court, Carn cannot meet her burden of proving that any Walmart employee had actual or constructive notice of the puddle. The court is not so convinced. The surveillance videotape shows a "floor custodian" sweeping trash from the produce aisle where the puddle was located and walking within several feet of the puddle a short period of time before Carn's fall. It also shows a "cart attendant" placing a cart with vegetables to the left side of the aisle in the area where Carn fell, and then moving this cart to various positions in the produce aisle in the time period before Carn fell. Certainly, the amount of time that the puddle was on the floor cannot be left to speculation. See Gillespie, 394 S.E.2d at 25 ("[The record] does not show how long the water had been on the floor . . . [and] [t]he question of whether the water was on the floor for such a length of time as to infer that Wal–Mart was negligent in not discovering and removing it is not one that can be left to speculation."). But a reasonable juror could interpret the surveillance videotape as evidence of either the floor custodian or the cart attendant's actual or constructive knowledge of the puddle.

Additionally, the surveillance videotape shows a large shopping cart containing fresh vegetables in the aisle where Carn fell. Carn argues—albeit without any evidence in the record that is currently before the court to support her assertion— that large grocers such as Walmart "constantly wet their fresh vegetables with mist." Pl.'s Resp. 2. If this is true, and Carn can put on testimony from either an expert in the business practices of large grocers or from a Walmart employee that the produce aisle frequently has water on the floor due to the practice of misting fresh vegetables,

then a reasonable juror could find that Walmart either knew or should have known that the vegetable cart, which the surveillance videotape shows the cart attendant unloading immediately preceding Carn's fall, would have water dripping on to the floor that could have formed the puddle.

Without any testimony from Toomer or any other Walmart employee about their knowledge of the alleged hazard, the court is unable to determine the actual and constructive notice issue. Furthermore, the surveillance video shows a floor custodian sweeping the aisles of the produce department in the close vicinity of the puddle just a few minutes before Carn fell. This video could persuade a reasonable juror that a Walmart employee had actual or constructive notice of the puddle. Thus, Walmart's summary judgment motion fails.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** Walmart's motion for summary judgment.

**AND IT IS SO ORDERED**.

	DAVID C. NORTON
	UNITED STATES DISTRICT JUDGE

**September 7, 2017**
**Charleston, South Carolina**